J-S03001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2202 EDA 2022 |

Appeal from the Order Entered August 5, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000950-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2203 EDA 2022 |

Appeal from the Decree Entered August 5, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000089-2022

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 21, 2023**

E.A. ("Mother") appeals from the decree terminating involuntarily her parental rights to her child, N.A.,[1] born August 2020, as well as the goal

---

[1]  The captions use two different conventions for the child's initials.  Within this memorandum, we use only the first and last initial for the child, N.A.

change order entered the same date that changed N.A.'s permanent placement goal to adoption.[2]  We affirm.

We glean the following from the certified record.  In August 2020, N.A. was removed from Mother's care upon discharge following her birth and placed in foster care by the Philadelphia Department of Human Services ("DHS").  N.A. was adjudicated dependent and remained in foster care.[3]  Mother appealed, and this Court affirmed the court's dependency order.  **See Interest of N.A.**, 256 A.3d 9 (Pa.Super. 2021) (non-precedential decision).  The concerns of DHS with regard to Mother were manyfold:  her mental health and history with DHS, which included termination of her parental rights to all four of her older children; testing positive for marijuana in the early stages of her pregnancy with N.A.; unstable housing; and her inability to retain information regarding personal safety, childcare, developmental stages, and decision-making about who should be in the child's life.  Given these concerns, Mother's objectives included mental health treatment, obtaining secure housing and employment, and completing parenting classes.  Mother had weekly visits with N.A., as well as virtual visits during the pandemic, though Mother missed several of the virtual visits.  Early visits between Mother and N.A. were conducted at an aunt's house, while later visits were moved to the

---

[2]  The trial court also entered a separate decree terminating the rights of N.A.'s unknown father.  No appeal from that decree has been taken and no father has been identified.  This Court consolidated Mother's appeals *sua sponte*.

[3]  The foster parents, S.E. and L.E., are a pre-adoptive resource for N.A. and had already adopted two of Mother's older children.

offices of the community umbrella agency ("CUA") due to the aunt's concerns regarding COVID-19.

On February 11, 2022, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). It also filed a petition seeking to change N.A.'s permanency goal from reunification to adoption.

The trial court conducted a hearing on August 5, 2022.[4] DHS presented the testimony of Ro Faye, who was the initial CUA caseworker assigned to the family, as well as Alexis Hylton, who was the currently-assigned CUA caseworker. Mother testified on her own behalf. At the conclusion of the hearing, the trial court declined to terminate pursuant to § 2511(a)(1) but terminated Mother's rights pursuant to § 2511(a)(2), (5), (8,) and (b), as well as a separate order changing N.A.'s permanency goal to adoption.

Mother timely filed the instant notices of appeal from the termination decree and goal change order concurrently with concise statements of matters complained of on appeal. The trial court issued a notice of compliance with Pa.R.A.P. 1925(a), directing us to its reasoning as transcribed during the

---

[4] At the time of the hearing, N.A. was two years old and was represented by her guardian *ad litem* ("GAL")/child advocate. ***See In re T.S.***, 192 A.3d 1080, 1092 (Pa. 2018) (holding that "an attorney-GAL who is present and representing a child's best interests can properly fulfill the role of [23 Pa.C.S. §] 2313(a) counsel where, as here, the child at issue is too young to be able to express a preference as to the outcome of the proceedings"). GAL filed a letter with this Court joining the brief of DHS.

August 5, 2022 hearing.  Mother raises the following issues for our consideration:

1. Did the trial court err as a matter of law or abused its discretion where it determined that the requirements of 23 Pa.C.S.A. 2511(a) to terminate E.A.'s parental rights were met.

2. Did the trial court err as a matter of law or abused its discretion where it determined the requirements of 23 Pa.C.S.A. 2511(b) were met.

3. Did the trial court err as a matter of law or abused its discretion where it determined that the permanency goal for N.A. should be changed to adoption.

Mother's brief at 3.

We begin with our standard of review for matters involving involuntary termination of parental rights:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of B.G.S.*, 245 A.3d 700, 704 (Pa.Super. 2021) (cleaned up).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."  *Interest of G.M.K.*, 255 A.3d 554, 560 (Pa.Super. 2021) (cleaned up).  "[I]f competent evidence supports the trial court's findings, we

- 4 -

will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up). Termination is proper when the moving party proves grounds for termination under any subsection of § 2511(a), as well as § 2511(b). *T.B.B.*, *supra* at 395. To affirm, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we focus our analysis on § 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy § 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018).

Unlike other subsections, § 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). "[T]he relevant inquiry" regarding the second prong of § 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). Further, the Adoption Act prohibits the court from considering "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically "accounts for the needs of the child." *In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa.Super. 2008) (*en banc*). This Court has recognized "that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to

complete the process of either reunification or adoption for a child who has been placed in foster care.

*Id*.

In granting termination pursuant to § 2511(a)(8), the trial court found that after two years, Mother lacked the capacity to parent N.A. and her incapacity was not likely to be remedied at any point in the near future. *See* N.T. Hearing, 8/5/22, at 91-93. The trial court acknowledged that Mother had made some positive strides, but that "even with the services in place, some of which [Mother] has taken advantage of, some of which she has not, those circumstances that brought [N.A.] into care continue to exist . . . two years in. [I]t's not likely that that's going to change at any point in the near future." *Id*. at 94.

Mother concedes that the first prong, removal for a period exceeding twelve months, has been met. *See* Mother's brief at 23. However, she avers that DHS failed to prove by clear and convincing evidence the second and third prongs of § 2511(a)(8). Mother claims that she met all goals by obtaining stable housing and employment, attending the parenting capacity evaluation, visiting with N.A., and attending an online parenting class. *Id*. at 25. As to the third element, Mother argues that her relationship with N.A. has improved over time and that it would not be in N.A.'s best interests to sever that relationship. *Id*. at 26.

Mother's argument ignores the testimony of the CUA caseworkers who focused their concerns on Mother's capacity to parent notwithstanding her

improved housing and employment situations. According to Ms. Faye, Mother displayed an inability to properly care for N.A. during supervised visitations, including age-appropriate activities and foods, bottle making, feeding, and burping, and what to do when N.A. began crying. In fact, it appeared to Ms. Faye that Mother was unable to retain even the most basic parenting skills despite repeated CUA staff instructions, N.A. being her fifth child, and having previously partaken in parenting classes before N.A.'s birth. *See* N.T., 8/5/22, at 12-13, 18. In addition, while Mother was initially engaging during the visitations, her attention would wane, and she would have difficulty remaining focused on caring for N.A. during the latter portions of the visit without redirection by the CUA staff. Often, Mother was distracted by video calls and text messaging during visits. *Id*. at 15, 17-19, 21. Notably, Mother did not progress beyond supervised visits because once her active engagement ceased after the first thirty or so minutes, "there was a lot of help needed" and "engagement of all of the office staff." *Id*. at 22-23. Finally, Mother voluntarily discharged herself from her mental health treatment, despite that being one of her goals. *Id*. at 66, 86, 89.

Based upon these facts, we discern no abuse of discretion or error of law in the trial court's crediting of the caseworkers' testimony and the conclusion that the conditions leading to N.A.'s removal continued to exist more than twelve months after her removal. Likewise, we discern no abuse of discretion or error of law in the trial court's conclusion that termination best

served the welfare of N.A. pursuant to § 2511(a)(8). She has spent her entire life with her pre-adoptive foster parents. Thus, the court was well within its discretion to prioritize the needs for permanency and stability of N.A. over Mother's claim that she was ready for reunification. *See R.J.S.*, *supra*, at 513.

Next, we consider whether the trial court committed an error of law or abuse of discretion pursuant to § 2511(b). As explained above, § 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond that N.A. may have with Mother and the effect of severing that bond. *L.M.*, *supra* at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. *J.N.M.*, *supra* at 944 (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

As with § 2511(a)(8), Mother argues that her relationship with N.A. has improved over time. *See* Mother's brief at 29-30. Mother points us to her

testimony that she has an "amazing" relationship with N.A., that they play together during visits, and N.A. rests next to Mother when she is tired. *See id*. Finally, Mother notes that she has matured greatly since N.A. was born and that she has been able to engage more with N.A. as N.A. has gotten older. *See id*. at 30.

> In relation to § 2511(b), the trial court concluded as follows:

> And the testimony of CUA, both Ms. Faye and Ms. Hylton, is that while [N.A.] does know who her mother is and has a bond with her, it's not that of a parent child. It's more that of a aunt/niece, someone she's coming to visit on a consistent basis and that, in fact, [N.A.'s] primary bond and attachment to individuals as parents is that of her foster parents with whom she's resided since she was discharged from [the hospital]. And, in fact, the testimony from both CUA worker[s], which again I did find credible, is that [N.A.] would be negatively impacted if, in fact, she was removed from that home and returned to [Mother] amid the concerns that [Mother] could not adequately care for her.

> . . . .

> And so, this court is going to find that given the lack of parent child bond between Mother and [N.A.] and the parent/child bond between [N.A.] and her current foster parents, there would not be any detrimental impact to [N.A.] in terminating involuntarily [Mother's] parental rights.

N.T., 8/5/22, at 95-96 (capitalization altered).

Ms. Faye testified that although N.A. "has an attachment to [Mother], it's about the extent that you would have with an aunt." N.T. 8/5/22, at 40. From N.A.'s perspective, Ms. Faye opined that her parents are the foster parents and she has accepted the foster parents' home as her own. *See id*. It is to the foster parents whom she looks for comfort, safety, and stability.

*See id*. at 39. While Ms. Faye noted that Mother clearly had a "genuine interest in" N.A., the child, "for the most part," treated Mother "the same way she treated other office staff[.]" *Id*. at 22. As such, Ms. Faye opined that N.A. would not suffer any irreparable harm if Mother's rights were terminated. *See id*. at 40.

Ms. Hylton, the current caseworker, echoed these conclusions: the pre-adoptive foster parents meet N.A.'s daily needs, they are to whom she looks for comfort, safety, and stability, and it is the foster parents with whom she has a parent/child bond. *See id*. at 69. N.A. refers to S.E. as "mom" and L.E. as "dad." *Id*. With respect to Mother, Ms. Hylton testified that it is "not a really strong bond. [N.A.] responds to [Mother], but it's not as a mom. . . . It's not as a mother/daughter bond. It's more of she's visiting with someone." *Id*. at 70.

We defer to the court's assessment of the caseworkers' testimony as it is supported by the record. The court was within its discretion to conclude that Mother is not able to meet the needs and welfare of N.A. and that terminating Mother's rights best serves N.A.'s needs and welfare. Accordingly, no relief is due with respect to the termination decree.

Finally, we turn to the goal change order, which we review for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). When considering a goal change petition, "[t]he best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the

ability to handle the responsibilities of parenting." **In re A.B.**, 19 A.3d 1084, 1089 (Pa.Super. 2011) (citations and quotation marks omitted).

Mother contends that the goal change was premature because Mother was working on her objectives and had a relationship with N.A. **See** Mother's brief at 31. As noted, N.A. has been in the same foster home since she was discharged from the hospital. Stated succinctly, while we commend Mother for the strides she has made in improving her housing and employment situations, the record is replete with evidence that Mother lacks the capacity to provide adequate care to N.A. Given Mother's inability to retain basic parenting skills, her voluntary withdrawal from mental health treatment, the amount of time N.A. has spent in foster care, and the need for N.A. to achieve stability in her own life, the court's decision to change the permanency goal was well within its discretion.

Based on the foregoing, we affirm the decree terminating Mother's parental rights and the order changing the permanency goal to adoption.

Decree affirmed. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023

- 13 -